Pratt, J.
This action was commenced to settle conflicting claims to a strip of land lying on Hew York bay, in the town of Southfield, on Staten island. It is conceded that Cornelius Carsen, prior to 1826, and from that time on until his death, in 1832, owned a parcel of land, consisting of about six acres, including the strip in question, which ran down to ordinary high-water mark. A few feet from this mark, upon the upland, stood a dwelling-house, which, throughout this litigation, has been called the “Brewer House.” Between this house and ordinary high-water mark ran an old wagon track, wide enough for two wagons to pass each other. It is not clear whether or not this old track had ever been laid out under lawful authority, or had been dedicated to public use, and accepted by public authority, except the fact that in 1826 the commissioners of highway “laid out” such a highway, which included this track or some part of it. It is plain, however, that the track had been in actual use by the public for more than 30 years at the time of Carsen’s death, in 1832. During that year Carsen made his will, which was subsequently proven, whereby he devised this Brewer House, “together with the lot on which.it stands, being about one-half an acre, ” to his son Richard, and his wife, Henrietta, for life, with remainder to their children in equal shares. He devised the residue of this real estate to other grandchildren. The plaintiff claims under the devise first named, and the defendant under the residuary devise. The controversy may now be summed up in a few words. It is claimed by the defendant that the devise of the house and lot extended only to the center of this old wagon track, and that the residuary devise carried the other half of this old track or road, together with a strip of land lying between the so-called road and the ordinary high-water mark, to her grantors. It appears that in 1826 the commissioners of highway of the town of South-field, by proceedings which were proper in form, at least, “laid out” a new road, two rods wide, beginning at the stoop of the Brewer House, and extending towards the bay, which new road included the old track wholly or in part. It is now argued by plaintiff that this new road was the one which the testator had in mind when he made his will, and by the defendant that it must have been wholly upon the upland between the house and the ordinary high- *306 water mark; otherwise, as it is said, the proceedings of the commissioners are either wholly void, or void pro tanto the portion which extended beyond that •mark upon the beach, on the ground that the commissioners had no power to appropriate any part of the beach for highway purposes.
Another element remains to be noticed, viz., the ¿ventees of the Brewer House and lot applied to the commissioners of the land-office, claiming to be the owners of the upland adjoining high-water mark, and obtained a grant of the beach and land under water. They claim that this grant covers any accretion at this point. It is. claimed, on the other hand, that this grant is void because the grantees did not own the adjoining upland. The contention is thus apparent: (1) Did the Oarsens’ devise of the Brewer House and lot carry the land between the house and high-water mark, or (2) only to the center of the road; and, if the latter, then (8) to the center of which road; and (4) where was this center line? The learned trial judge and the counsel on both sides seem to have assumed that the lot ran only to the center line of one or the other of these so-called roads. AVe think it will be unnecessary to examine the authorities cited by the appellant to show that the proceedings of the highway commissioners were unlawful. This contention is based on the assumption that the new road extended beyond high-water mark into the bay. If that was true, their action, in the worst view of the case, would be wholly void. Hence, if the testator intended to bound the Brewer lot by the center of the legal highway, there was no such highway (in that view of the case) to which it might apply. The action of the commissioners was not the widening of the old highway, but apparently the laying out of an entirely new highway, which would seem to indicate that the old track was not a legal highway. If this was' the fact, then there was no legal highway at all by the center of which the Brewer lot could be bounded, and this branch of defendant’s argument wholly fails.
This brings us to the point which seems to us to be the true view of this case, viz., that the Brewer lot was intended by this testator to be bounded by the bay itself, and not by any road or track at all. Here was a house and lot looking out upon the bay, which, but for this old wagon track along the beach, seems to have been bounded by the bay as its natural boundary on that side; at least, the strip of upland lying between this old wagon track and ordinary high-water mark must have been so narrow as to exclude the idea of its use for any practicable purpose at that early date. It could not have been used for building purposes; it was not needed for fishing purposes, because the beach itself was free for that purpose. It is difficult to see how it could have been used for any valuable purpose. It seems to us altogether incredible that this testator could have intended to devise this house and lot with reference to this old wagon track, and thus have intended to leave this so-called strip- between the lot and its natural boundary, and this quite irrespective of the ownership of the fee in the half of the track itself, which was lying next to the bay, subject to any public easement for road purposes. On the other hand, if the testator intended to bound his lot with reference to any.road, it seems to us it must have been by what he supposed was the new road as laid out by the commissioners. It is a mistake to assume that he intended to bound it by a legal highway. Assuming that he intended to refer to the highway at all as a boundary, the survey and proceedings of the commissioneus furnished a better criterion than any other thing which seemed to have existed at that time, because they, and the record thereof, were of a permanent character. If he did refer to any highway as a boundary, the case, as it seems to us, was properly put to the jury by the learned trial judge, because he charged, in substance, that if the new road was. two rods wide, one side being at the stoop of the Brewer House, then the center of it must have been 16| feet from that stoop. He then required the jury to find upon the question, was the ordinary high-water mark within 16J feet of that stoop? saying, *307 at the same time, that, if it was, then nothing could pass under the residuary devise, for the reason that the testator owned nothing beyond ordinary high-water mark towards the water. Irrespective of any other view of the case, this finding seems to us to settle the controversy. It will not, therefore, be necessary to examine any other questions arising upon the charge, for the reason that the jury found specially that the center of this new road was 16£ feet from the Brewer House stoop. In this view of the facts, the charge was, at least, as favorable to defendant as she was entitled to have it. Without going into detail, it is sufficient to say that we have examined the evidence, and concluded that this finding was fully justified thereby. Ho point is made upon any of the exceptions relating to the admission or rejection of evidence. It therefore follows that the.judgment in this respect should be affirmed.
We think the motion for extra allowance was properly granted. It was conceded that the premises in question were worth some $17,000. The extra allowance was $500. The case was difficult, and extraordinary in the professional attention which must have been bestowed upon its preparation. We therefore affirm the order.
Dykman, J., concurs.